UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
REPUBLICAN NATIONAL COMMITTEE           )
                                        )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )   Civil Action No. 1:16-cv-00486-JEB
                                        )
UNITED STATES DEPARTMENT                )
OF STATE                                )
                                        )
            Defendant.                  )
_____)

### BRIEF IN OPPOSITION TO DEFENDANT'S PROPOSED PRODUCTION SCHEDULE

Pursuant to this Court's June 20 Order, Plaintiff files this Brief in Opposition to Defendant's Proposed Production Schedule.

In just over four months, on November 8, the United States will elect a new President. By Election Day, voters deserve to have had access to as much information as possible about the presidential candidates and their fitness for this nation's highest office. For that reason, the Republican National Committee ("Plaintiff") filed its at-issue request for expedited processing and release of agency records under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, aiming to shed greater light on presumptive presidential nominee Hillary Clinton's tenure as Secretary of State. Plaintiff filed the request with the U.S. Department of State ("Defendant") nearly seven months ago. Since then, Defendant has done little except delay. And now that it has taken the step to identify 3,900 potentially relevant records, comprising only about 7,000

total pages, Defendant proposes to "process"[1] (not even necessarily produce) those records at a snail's pace: merely **500 pages (not documents) per month** (*see* Dkt. No. 11, at 2), or about as many pages as a contract attorney reasonably should review in one day (*see infra* at 5).  Under Defendant's proposal, responsive, non-exempt records thus would not all be produced until nearly a year after Election Day 2016 has passed.

Yet public scrutiny of Hillary Clinton's tenure as Secretary of State must take place *before* the American people cast their ballots this November.  *See, e.g., Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004) (explaining that FOIA is a "means for citizens to know what their Government is up to," which is "a structural necessity in a real democracy" (citation and quotation marks omitted)).  "Stale information" generally "is of little value," *Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988); in an election year, it is of no value at all.  Therefore, Defendant's proposed review and production schedule is completely unreasonable, and Plaintiff hereby requests that the Court instead compel Defendant to process and produce all requested records by no later than November 1, 2016.[2]

**Background**

Plaintiff filed its FOIA request on December 4, 2015, seeking records exchanged between certain officials at the State Department and individuals utilizing e-mail accounts from designated domain names affiliated with Secretary Clinton or her associates, and certain individuals employed by U.S. Department of State from January 21, 2009, through February 1, 2013.  (*See* Ex. A).  Nearly two months later, on January 27, 2016, Plaintiff received a letter

---

[1] Defendant defines processing to mean "reviewing a document and (1) determining whether it is responsive to the request; (2) referring the document to another agency for consultation, if necessary; (3) and reviewing the document to determine whether any FOIA exemptions apply."  (Dkt. No. 11, at 2 n.1).

[2] Plaintiff conferred with counsel for Defendant prior to the filing of the Joint Status Report and counsel for Defendant was unable to agree with Plaintiff's proposed schedule.

2

from Defendant acknowledging receipt of Plaintiff's FOIA request. From there, however, Plaintiff did not receive any further correspondence, let alone a production of documents, from Defendant.[3]

After months of this silence, Plaintiff filed its Complaint initiating this lawsuit on March 14, 2016. Defendant answered the Complaint on April 14. Also that day, the Court ordered the parties to file a joint briefing schedule. The parties met and conferred on April 22. As of April 25—nearly a month and a half after this suit was filed—Defendant had collected only sixteen pages of responsive records. The following day, the Court granted a request for an extension of time, ordering the parties to file a proposed briefing schedule by May 16.

On May 16, Defendant produced only five responsive records, which consisted of just twelve pages (four of the documents were released with excisions, while one was released in full). Also on that date, Defendant informed Plaintiff (and the Court) that it had collected approximately 4,200 potentially responsive documents, but that its search and collection process remained ongoing and would not be completed until on or about June 16. (*See* Dkt. No. 10 ¶¶ 3–4). As a result, the parties agreed that they would be better situated to propose a production schedule on June 16 and proposed filing another joint status report on that date. (*Id.* ¶¶ 5–6). The parties further agreed that responsive, non-exempt documents would be produced on a rolling basis going forward, and that State would "process a *minimum* of 500 pages for [a] second production [to be made] on June 16." (*Id.* ¶ 8). On May 17, this Court entered an order requiring the parties to submit a further joint status report by June 16.

---

[3]    Because defendant failed to make a determination as to the requests within twenty working days, as required by FOIA, 5 U.S.C. § 552(a)(6)(A), Plaintiff constructively exhausted its administrative remedies and proceeded directly to this Court. *See Citizens for Responsibility & Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180, 182 (D.C. Cir. 2013) (a requestor exhausts its remedies unless, within the relevant time period, the agency "inform[s] the requester of the scope of the documents that the agency will produce, as well as the scope of the documents that the agency plans to withhold under any FOIA exemptions"); *id*. at 189-90 ("[I]f the agency does not adhere to FOIA's explicit timelines, the 'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court.").

3

On June 16, Defendant produced an additional 162 pages of responsive materials, and the parties submitted another joint status report. Defendant asserted that it had finished collecting records and had identified approximately 3,900 potentially responsive documents, comprising about 7,000 pages. Defendant proposed to "process" only 500 pages per month until production of these records is completed, (Dkt. No. 11 at 2–3), without prioritizing any documents, even though Defendant acknowledges that it does not believe many of the responsive records are subject to interagency consultation. (*Id.* at 2). Under Defendant's proposal, processing and production of responsive records would not be completed until approximately September 2017. Believing Defendant's proposal to be unreasonable, Plaintiff submitted its own proposal—one that took into account the important exigencies surrounding Plaintiff's request—under which the responsive records would be produced by no later than November 1, 2016. (*Id.* at 4).

## **Argument**

"[U]nreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent [such] abuses." *Payne Enters.*, 837 F.2d at 494 (quotation omitted). When an agency is shown to have unreasonably delayed production, a court accordingly may order a prompt production schedule. *See, e.g.*, *Schulte v. Dept. of Health and Human Services*, 14-cv-887-JDB, ECF No. 28 (D.D.C. June 5, 2015) (ordering that HHS *produce* at least 3,000 pages per month for two months); *id.*, ECF No. 23 (ordering that HHS produce at least 1,000 pages per month for three months). From the beginning of this matter, Defendant has delayed meeting its statutory obligations. Through its proposed production schedule, Defendant once again—but this time with protection of a Court order—seeks to drag its feet: at the expense of American voters. The Court should not allow this to happen. *See NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 352, 261 (1976) (explaining

that FOIA is meant to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold governors accountable to the governed").

According to Defendant, it can "process" only 500 pages a month (*see* Dkt. No. 11, at 2). This number (which equates to review of about 23 pages per work day[4]) is truly incredible. In fact, 500 pages is close to the number of pages the typical contract attorney should be able to review in a single *day*. *See* David Degnan, *Accounting for the Costs of Electronic Discovery*, 12 Minn. J.L. Sci. & Tech. 151, 165 (2011) ("Industry standards suggest that document reviewers can read, understand, and mark 50 *documents* [not pages] per hour or 400 *documents* per day." (emphasis added)); *see also* Chris Egan & Glen Homer, *Achieve Savings By Predicting And Controlling Total Discovery Cost*, The Metro Corp. Counsel (Dec. 1, 2008), http://www.metrocorpcounsel.com/pdf/2008/December/08.pdf ("For a typical linear review, an industry-recognized standard is approximately 50 documents per hour, per reviewer. For a conceptual review product, our historical data shows an average of 200 documents per hour, per reviewer."). If a private party in litigation with the Government argued that reviewing 3,900 documents (or 7,000 pages) posed an unreasonable burden, the Government surely would reject that argument out of hand and press to compel disclosure.[5] That the Government argues for a different standard here exposes its not-so-subtle strategy to delay.

Defendant asserts no "unusual circumstances" that might justify such an unreasonably slow review and production schedule—or, for that matter, explaining why Defendant has already

---

[4] Assuming 22 average calendar workdays per month.

[5] When the shoe is on the other foot, the Government does not hesitate to demand production of millions upon millions of documents. In the merger context, for instance, the Government's discovery requests on average require private parties to review "47 GB of emails and other electronic documents using review tools," which translates to around "4.8 million pages (including attachments)." Peter Boberg & Andrew Dick, *Findings From the Second Request Compliance Burden Survey*, The Threshold, Volume XIV, No. 3, A.B.A. Section of Antitrust Law at 31–32 (Summer 2014). On average, private parties in merger review have about 5.9 months to meet the Government's demands for documents—which is less time than the at-issue FOIA request has been pending.

taken so long to meet its obligations to Plaintiff under FOIA. *See* 5 U.S.C. § 552(a)(6)(B)(i) (limiting extensions of time beyond FOIA's normal 20-days limit under § 552(a)(6)(A) to only specific "unusual circumstances"); *id.* § 552(a)(6)(B)(iii) (defining "unusual circumstances" as (i) the need to collect records from separate offices, (ii) the need to collect and examine voluminous amount of separate and distinct records, or (iii) the need for consultation with another agency); *see also* Dkt. No. 11 at 2 ("State . . . currently believes that it can process the documents in question without interagency consultation."). Instead, Defendant merely complains that the request cannot be completed with reasonable speed because of other (predictable) FOIA requests that Defendant has received in recent months. Under FOIA, however, "a delay that results from a predictable agency workload of requests" does not justify slow-rolling a requester, "unless the agency demonstrates reasonable progress in reducing the backlog of pending requests." *Id.* § 552(a)(6)(C)(ii). Defendant has not made—nor even tried to make—any such showing here.

Defendant has now had close to seven full months to search, collect, process, review, consult, and produce documents to Plaintiff. Yet, without adequate justification, it has produced only about 170 pages of responsive records. While Plaintiff has waited patiently for Defendant's responses and productions—even consenting to several extensions to help ease Defendant's burden—Defendant has repeatedly failed to demonstrate any reasonable progress in completing Plaintiff's request. And now, Defendant asks this Court to cement its stall tactics through an absurdly slow review and production schedule. Plaintiff, however, is entitled to prompt resolution of its FOIA request, and it should receive all responsive records well before Election Day this November.

## Conclusion

For the foregoing reasons, Plaintiff respectfully asks this Court to enter an order requiring that Defendant complete Production of the requested and already identified documents no later than November 1, 2016.

Dated:  June 21, 2016                                        Respectfully submitted,


   /s/ Jason Torchinsky_____
JASON TORCHINSKY
(DC Bar No. 976033)
Holtzman Vogel Josefiak Torchinsky PLLC
45 North Hill Drive, Suite 100
Warrenton, VA 20186
Phone: (540) 341-8808
Fax: (540) 341-8809
Email: jtorchinsky@hvjt.law

*Attorney for Plaintiff*

## Certificate of Service

I hereby certify that on this 21st day of June, 2016, a copy of the foregoing has been sent via the CM/ECF notification system which served all counsel of record.

/s/ Jason Torchinsky
Jason Torchinsky
